# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | 8:05CR104 |
| ) | |
| vs. ) | REPORT AND |
| ) | RECOMMENDATION |
| BOBBY E. MOORE, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the motion of the defendant Bobby E. Moore (Moore) to suppress (Filing No. 12). Moore is charged in the indictment with possession of a firearm after previously being convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). **See** Filing No. 1. Moore seeks to suppress evidence seized from his person during a traffic stop on February 14, 2005. Moore argues the initial stop, detention and subsequent search of his person were without justification.

The court held an evidentiary hearing on Moore's motion on May 24, 2005, which was continued on June 7, 2005. Omaha Police Department (OPD) Officers Joseph E. Baudler (Officer Baudler) and Keith Williamson (Officer Williamson), and Celeste Smith (Ms. Smith) testified at the hearing. The transcript for the hearing was filed on June 15, 2005 (TR.). Moore filed a brief (Filing No. 13) in support of the motion to suppress. The government did not file a brief in opposition to the motion.

## FINDINGS OF FACT

On February 14, 2005, at approximately 1:30 a.m., Officer Baudler[1] was driving an unmarked police vehicle northbound on 30th Street conducting routine patrol in the Northeast Precinct (TR. 4, 14, 80). Officer Baudler observed a red 1992 Ford Ranger, which was traveling northbound on 30th Street, weaving several times across the center line into the

---

[1] Officer Baudler has been an OPD police officer for sixteen years (TR. 3). Officer Baudler is currently assigned to the Northeast Precinct gang suppression unit where he has worked in the gang suppression unit for one year (TR. 3).

southbound lane (TR. 5, 19).  Officer Baudler watched the vehicle for a couple of miles from Fort Street to Titus, where the vehicle turned west (TR. 5).  Based on this observation, Officer Baudler suspected the driver of the red Ford was intoxicated (TR. 5).  Officer Baudler stopped the red Ford near 30th Street and Titus as the red Ford was pulling into a residence (TR. 5-6).  Officer Baudler was not familiar with either the driver or the red Ford before making the stop on February 14, 2005 (TR. 6, 24, 32).

     Ms. Smith testified she is the wife of Moore and manages the Club 2000 Grapevine Lounge (Club 2000) at 24th and Ames Street in Omaha (TR. 37).  Moore works as an assistant manager (TR. 37).  Both Ms. Smith and Moore were working the night of February 13, 2005 (TR. 38).  When Club 2000 closed for the evening, Ms. Smith and Moore locked up and headed to their home at 3019 Titus (TR. 39).  Moore drove a friend's red Ford Ranger, and Ms. Smith followed him in a burgundy Ford F-150 pickup (TR. 40).  Ms. Smith testified this driving pattern was a normal routine when both are working at the club (TR. 40).  Moore and Ms. Smith drove west on Ames Street to 30th Street and turned right on Ames Street at 30th Street to drive toward Titus to go to their residence, approximately two and half miles in distance (TR. 42).  Ms. Smith testified that, after Moore turned on 30th Street, she noticed a black car pull in behind Moore's red Ford Ranger and follow Moore (TR. 43).  Ms. Smith testified she was unaware that the black car was a police car and was concerned about the manner in which the black car followed Moore and seemingly attempt to block her vehicle from approaching Moore's vehicle (TR. 43).  Ms. Smith testified she did not see Moore's vehicle weave, drive erratically, or cross traffic lanes (TR. 44).  Ms. Smith testified that, as soon as Moore's vehicle turned onto Titus and drove into the residence's driveway at 3019 Titus, the flashing lights in back of the black car were activated and she realized the black vehicle was a police car (TR. 45).  The police car stopped behind Moore's vehicle and parked in the street blocking further entry into the driveway (TR. 46).  Ms. Smith parked in the street and waited in her vehicle (TR. 46).

     Officer Baudler approached the driver's side door and made contact with the driver, who Officer Baudler identified as Moore (TR. 6-7).  Officer Baudler asked for the driver's license and vehicle registration (TR. 7).  At that time, Officer Baudler noticed the smell of alcohol on Moore and asked if he had been drinking (TR. 7).  Moore admitted to having had

a couple of beers (TR. 7). Officer Baudler noted that a female drove up to the residence and parked near the police vehicle during the sobriety tests (TR. 8). Moore told Officer Baudler that he and his wife were just coming home from Club 2000 and that he managed the club (TR. 13). Officer Baudler asked Moore to step outside the vehicle for a series of field sobriety tests (TR. 8). Officer Baudler may have immediately conducted a pat-down of Moore, but he does not specifically recall (TR. 25-26). Ms. Smith remembers Officer Baudler conducting a pat down of Moore when Moore got out of the vehicle (TR. 51-52). In any event, nothing of evidentiary significance was found (TR. 26-27; 53). Moore passed some of the tests and had difficulty with others (TR. 8-9).

Officer Baudler testified he was going to use an Alco-Sensor device to measure Moore's sobriety, and the test requires a fifteen minute interval from the time an officer makes an observation that a subject has nothing in this mouth, such as gum or cigarettes, until the Alco-Sensor test is performed (TR. 9). Officer Baudler did not have an Alco-Sensor device in his unmarked police car and radioed for assistance from any nearby officer who had an Alco-Sensor device (TR. 80). Approximately fifteen minutes after the initial traffic stop, a marked police vehicle arrived with one uniformed officer, Officer Williamson, who was patrolling several blocks away at the time[2] (TR. 47, 54, 55, 81). Upon arrival, Officer Williamson parked his marked cruiser behind Officer Baudler's unmarked police vehicle, got out, and talked with Officer Baudler (TR. 82). Officer Williamson told Officer Baudler that Officer Williamson had an Alco-Sensor and asked if it enough time had elapsed to administer the test (TR. 82). When Officer Baudler said enough time had passed, Officer Williamson returned to his cruiser and obtained the Alco-Sensor device (TR. 82). Officer Williamson testified he recalled Officer Baudler saying nothing about a firearm being found on Moore, which would have been usual procedure had any weapon been found (TR. 82-83).

Officer Williamson administered the Alco-Sensor breath test, which showed Moore was well under the legal limit for alcohol, given fifteen to twenty minutes after the initial traffic stop (TR. 8-9, 12, 21, 57-58, 85). Officer Williamson did notice a slight odor of alcohol on

---

[2] Officer Williamson has been an OPD officer for five years and is currently assigned as a uniformed patrol officer (TR. 79-80). Prior to his employment with OPD, Officer Williamson was with the Lincoln Police Department for two years (TR. 79).

3

Moore and the Alco-Sensor test did indicate the consumption of some alcoholic beverages (TR. 84-85). After Officer Williamson completed the test, he showed the results to Officer Baudler (TR. 86). Officer Williamson then returned the Alco-Sensor device to a carrying case in the marked cruiser while Officer Baudler and Moore returned to a spot near Officer Baudler's unmarked car (TR. 86). Officer Williamson was about ten feet away when he observed Officer Baudler pat Moore down and remove a firearm from Moore's waist area (TR. 88). While Officer Williamson was administering the Alco-Sensor test, he observed Officer Baudler and Ms. Smith conversing back and forth (TR. 91). Officer Williamson specifically recalled Ms. Smith tell Officer Baudler the weapon found in the pat down of Moore belonged to her and she had requested Moore to hold it for her (TR. 91-92).

    Officer Baudler recalls that while waiting for the Alco-Sensor to arrive, Ms. Smith approached him and said she had given her gun to Moore for him to hold for her (TR. 10, 30). During the hearing, Ms. Smith denied ever mentioning a gun to Officer Baudler and testified that after the breath test, Officer Baudler told Moore he was going to search him again (TR. 58-61). Ms. Smith testified the gun found on Moore on February 14, 2005, was registered to her (TR. 69). Ms. Smith also knew, on February 14, 2005, that her husband was a felon and could not legally possess a gun (TR. 69). Officer Baudler asked Moore about the weapon (TR. 11). Moore initially stated he had some pepper spray and eventually admitted having a gun in his back pocket (TR. 11). Officer Baudler told Moore to put his hands on the vehicle and removed a loaded 9mm pistol and a bag of marijuana from Moore's pocket (TR. 11). Officer Baudler was not sure whether the gun was found before or after the Alco-sensor test was given, but testified it was around the same time (TR. 28).

    Moore admitted to Officer Baudler that he (Moore) also used the name Bobby Lott and was a felon under that name (TR. 12). Officer Baudler arrested Moore for being a felon in possession of a firearm (TR. 12). Officer Baudler also charged Moore with possession of marijuana and driving left of center (TR. 12).

    There is a divergence of testimony as to several critical issues in this matter. Officer Baudler testified Moore's red Ford Ranger wove, crossed several divider lines, and was driven erratically. Ms. Smith testified she did not observe any of that activity. The court credits Officer Baudler's testimony that he observed the red Ranger to commit the various traffic

4

violations he observed and that he reasonably suspected the driver of the red Ford Ranger could be intoxicated. Ms. Smith, while in a position to observe, was understandably concerned that her husband was being followed by an unidentified black car and was more concerned for his safety than making accurate observations of his driving. Accordingly, the court finds Officer Baudler had probable cause to believe that the red Ford Ranger was been driven in violation of traffic laws and that the driver may have been impaired.

The court finds Officer Baudler conducted the frisk of Moore which resulted in the discovery of the firearm <u>after</u> the Alco-Sensor test had been administered. While there was some conversation with Ms. Smith about the firearm, the precise timing of Ms. Smith's statements concerning the firearm is unclear. The court does find that Ms. Smith acknowledged that she provided Moore the firearm which was found in the second frisk of Moore. The court credits Officer Williamson's recollection of the events of that evening where his recollection differs from Officer Baudler or Ms. Smith. Officer Baudler's memory was vague and Ms. Smith had a motive to recall events favorable to her husband.

## LEGAL ANALYSIS

Moore argues there was no legitimate basis to conduct a traffic stop of Moore's vehicle. The court concludes Officer Baudler had probable cause to believe that a traffic violation was being committed by the driver of the red Ford Ranger. Officer Baudler's observations led him to believe the driver was impaired and that the driver had crossed the center line of the roadway. "[A] police officer who personally observes a traffic violation has probable cause to stop the vehicle." **United States v. $404,905.00 in U.S. Currency,** 182 F.3d 643, 646 (8th Cir. 1999) **citing Pennsylvania v. Mimms**, 434 U.S. 106, 109 (1977). Additionally, probable cause exists when the totality of circumstances demonstrates that a prudent person would believe that an individual has committed or was committing a crime. **Kuehl v. Burtis**, 173 F.3d 646, 650 (8th Cir. 1999). The courts must give law enforcement officers "substantial latitude in interpreting and drawing inferences from factual circumstances." **United States v. Washington**, 109 F.3d 459, 465 (8th Cir.1997).

Further, police officers may make a valid investigatory stop of a vehicle based on reasonable suspicion that the occupants of the vehicle are engaged in criminal activity. **See Terry v. Ohio**, 392 U.S. 1, 25-31 (1968); **United States v. Sharpe**, 470 U.S. 675, 682 (1985); **United States v. Navarrete-Barron**, 192 F.3d 786, 790 (8th Cir. 1999). Driving a vehicle while intoxicated would constitute criminal activity. "After making a valid **Terry** stop, police officers must diligently work to confirm or dispel their suspicions in a short period of time." **United States v. Bell**, 183 F.3d 746, 749 (8th Cir. 1999). Contemporaneous with a valid traffic stop, a police officer may detain the motorist while completing a number of routine tasks such as computerized checks of the vehicle registration, driver's license and criminal history, and issuing a citation. **$404,905.00,** 182 F.3d at 647; **see also United States v. Sokolow**, 490 U.S. 1, 7 (1989).

The court finds Officer Baudler's stop of Moore's vehicle to be fully justified under the circumstances as they existed on the morning of February 14, 2005. Moore's assertion that the firearm seized should be excluded from evidence on the basis of an illegal traffic stop is without merit.

Moore next argues that the firearm should be suppressed from evidence because it was discovered in a frisk of his person during a period of illegal detention after the completion of the traffic stop. Since traffic stops can be very dangerous, police may adopt precautionary measures addressed to reasonable fears due to the inordinate risks police take when they approach vehicles with persons seated in them. **Maryland v. Wilson**, 519 U.S. 408, 413 (1997). If the firearm was discovered during an initial frisk of Moore as he alighted from his vehicle or in a second frisk, the issue would be same, i.e., whether Officer Baudler believed Moore to be armed or dangerous and that a frisk at that point was reasonable. Whether due to the coat Moore was wearing, due to Officer Baudler's belief Moore was "only an old guy that was drunk (TR. 26)", or due to little suspicion that Moore was armed, the court finds Officer Baudler failed to discover the firearm in his initial frisk of Moore when he encountered Moore. The court finds, the firearm was found in a second frisk of Moore after the administration of the Alco-Sensor test and before the officers left the scene.

6

As such, Moore asserts the basis for the traffic stop was over, i.e., Moore had passed the Alco-Sensor test, and consequently, Moore was illegally detained for an additional frisk by Officer Baudler for no legal reason. The issue then becomes what was Officer's Baudler's rationale for the second frisk. Officer Baudler testified the frisk was conducted after he was alerted to the presence of a firearm by Ms. Smith. Ms. Smith testified she made no such statements. The courts finds from the evidence that there would be no reason to frisk Moore a second time unless Officer Baudler was informed Moore had a firearm on him. While Officer Baudler's recollection of the timing was vague, the general content of the conversations with Ms. Smith and Moore were recalled. Officer Williamson did note that Ms. Smith and Baudler engaged in some conversation while the Alco-Sensor test was being administered to Moore and thereafter Officer Baudler had Moore place Moore's hands on the car to prepare for a frisk. The court finds Officer Baudler was alerted to the presence of a firearm at the scene and was justified in conducting a frisk of Moore for officer safety. Accordingly, the second frisk of Moore was lawful and the seizure of the firearm was constitutional. Moore's motion to suppress should be denied.

**IT IS RECOMMENDED TO CHIEF JUDGE JOSEPH F. BATAILLION that** Moore's motion to suppress (Filing No. 12) be denied.

## ADMONITION

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 23rd day of August, 2005.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge