IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:05CR104 |
| | ) | |
| vs. | ) | |
| | ) | |
| BOBBY E. MOORE, | ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's objections, Filing No. 28, to the Report and Recommendation of Magistrate Judge Thomas D. Thalken, Filing No. 27. The magistrate judge recommended that defendant's motion to suppress evidence, Filing No. 12, be denied. Under 28 U.S.C. § 636(b)(1)(C), the court makes a de novo determination of those portions of the Report and Recommendation to which the defendant objects. Accordingly, the court has reviewed the record and briefs, including the transcript of the hearing on the motion. The court concludes that the defendant's objections should be sustained in part and overruled in part and that the Report and Recommendation of the magistrate judge should be adopted in part and rejected in part.

The defendant is charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The defendant filed a motion to suppress and the magistrate judge conducted a hearing. Omaha Police Department Officers Joseph E. Baudler (Officer Baudler) and Keith Williamson (Officer Williamson), and Celeste Smith (Ms. Smith), the defendant's wife, testified at the hearing. After the hearing, the magistrate judge recommended that the defendant's motion to suppress be denied. The defendant filed objections to the magistrate judge's Report and Recommendation. Specifically, he objects on the grounds that: (1) the government failed to carry its burden of proof as to a valid stop;

(2) the government did not have a valid basis to detain him after the sobriety tests were administered to him; and (3) the second pat-down search of his person after the initial stop, is invalid.

**Facts**

The record shows that on February 14, 2005, at approximately 1:30 a.m., Officer Joseph E. Baudler of the Omaha Police Department, while on patrol in an unmarked vehicle, observed a 1992 Ford Ranger traveling northbound on 30th Street weaving several times across the center line into the southbound lane. After observing the vehicle for a couple of miles, Officer Baudler stopped the Ford Ranger near 30th Street and Titus as it pulled into a residence. Officer Baudler approached the driver's side door of the Ford Ranger and made contact with the driver, defendant Bobby E. Moore. Officer Baudler asked the defendant for his driver's license and, at that time, the officer noticed the smell of alcohol on the defendant. Officer Baudler asked the defendant if he had been drinking and defendant admitted to having had a couple of beers. Officer Baudler also noticed that a female (Ms. Smith) drove up to the residence and parked near the police vehicle. The defendant told Officer Baudler that he and his wife drive home from work together each night. Defendant indicated that he and his wife manage a night club. Officer Baudler asked the defendant to step outside the vehicle and he administered a series of field sobriety tests to the defendant. Officer Baudler may have immediately conducted a pat-down of the defendant, but the officer does not specifically recall. The defendant passed some of the tests and had difficulty with others. Officer Baudler did not remember what tests he had given, nor did he remember what tests defendant had either passed or failed.

Officer Baudler radioed for assistance from a nearby officer, because he decided to use an Alco-Sensor device to measure the defendant's alcohol level. Shortly thereafter, Officer Keith Williamson, in a marked police vehicle, arrived at the scene. Officer Williamson informed Officer Baudler that he had an Alco-Sensor test and asked if enough time had passed to administer the test. According to the officers, a fifteen minute interval must pass from the time an officer observes that a subject has nothing in his mouth, such as gum or cigarettes, to the time the Alco-Sensor test is performed. Officer Baudler told Officer Williamson that enough time had passed, so Officer Williamson went to his cruiser and obtained the Alco-Sensor device. Officer Williamson administered the Alco-Sensor test to the defendant, which indicated a result well below the legal limit.

While Officer Williamson administered the test, however, he saw the defendant's wife, Ms. Smith, and Officer Baudler conversing. Officer Williamson subsequently showed the results to Officer Baudler. Officer Williamson then returned the Alco-Sensor device to his cruiser, which took about thirty seconds. At the same time, Officer Baudler and the defendant returned to a spot near Officer Baudler's unmarked car which was about ten feet away from Officer Williamson. During that thirty seconds, Officer Williamson turned and observed Officer Baudler pat-down the defendant and remove a firearm from the defendant's waist area and a bag of marijuana from one of his pockets.

Officer Baudler testified that, before the pat-down search, Ms. Smith told him that the defendant had her gun in his possession. Officer Williamson, however, testified that after the weapon had been confiscated, Ms. Smith then volunteered that the gun belonged to her and she had asked the defendant to carry it for her. Officer Baudler arrested the defendant for being a felon in possession of a firearm. He also charged the defendant with a driving violation and possession of marijuana.

Based on these facts, the magistrate judge denied the defendant's motion to suppress the firearm seized at the traffic stop. In doing so, the magistrate judge found: (1) that Officer Baudler had probable cause to stop the defendant and (2) that Officer Baudler was justified to pat-down the defendant, a second time, once the sobriety tests were administered to him. Based on these findings, the magistrate judge concluded that the seizure of the firearm from the defendant is constitutional. The court now turns to the examination of the magistrate judge's findings.

**Discussion**

*Initial Stop*

As stated above, the defendant contends that the government failed to carry its burden of proof to establish a valid traffic stop of defendant's vehicle. The court disagrees. The Eighth Circuit has "repeatedly held that 'any traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver.'" *United States v. Mallari,* 334 F.3d 765, 766 (8th Cir. 2003) (citing *United States v. Jones,* 275 F.3d 673, 680 (8th Cir. 2001)). "'To determine whether a traffic stop was based on probable cause or was merely pretextual, an objective reasonableness standard is applied.'" *Id.* An officer has an objectively reasonable basis for stopping a motorist where the officer has a reasonable basis for believing that the driver has breached a traffic law. *Id.* (citing *United States v. Thomas,* 93 F.3d 479, 485 (8th Cir. 1996), and *United States v. Sanders,* 196 F.3d 910, 913 (8th Cir. 1999) (officer's mistaken, but objectively reasonable belief that a traffic violation occurred supported a traffic stop)).

In this case, the defendant argues that the defendant's wife, who drove behind Officer Baudler's unmarked vehicle, did not see her husband commit any traffic violation. According to defendant, Officer Baudler is not credible and stopped the defendant only

4

because he suspected illegal drug activity at the defendant's place of employment. The court, however, finds these arguments unpersuasive. First, Ms. Smith testified that she had concerns about the defendant's safety when she noticed that he was being closely followed by what turned out to be an unmarked police vehicle. She also testified that she repeatedly attempted to pass the unmarked vehicle in order to position herself behind her husband's vehicle. As the magistrate judge noted, Ms. Smith's testimony showed her main concern to be with her husband's safety. The magistrate judge surmised that this could have caused her to fail to focus on the defendant's driving. Second, the record indicates that Officer Baudler became aware of defendant's place of employment only after the traffic stop. The court generally agrees with these findings. Accordingly, the court finds the magistrate judge properly concluded that Officer Baudler had probable cause to stop the defendant after he observed him drive over the street's center lane several times.

*Defendant's Continued Detention and Second Pat-Down*

The defendant next argues that his continued detention after the officers concluded the sobriety tests and the second pat-down of his person are illegal. The court agrees. As the Eighth Circuit has indicated: "[a] police officer may search an individual's outer clothing to discover weapons when the officer reasonably believes that the individual may be armed and dangerous." *United States v. Ward,* 23 F.3d 1303, 1306 (8th Cir. 1994) (citing *Terry v. Ohio,* 392 U.S. 1, 27 (1968)). "In determining whether the officer acted reasonably in such circumstances, [the court] gives weight 'to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.'" *Id.*

Officer Williamson testified that he observed Ms. Smith and Officer Baudler conversing. According to the testimony of Officer Baudler, Ms. Smith alerted him that her husband had a gun. Ms. Smith testified that she never told Officer Baudler that the

5

defendant had a gun. The magistrate judge found the testimony of Officer Baudler to be more credible than that of Ms. Smith. The magistrate judge determined that Officer Baudler properly patted down the defendant a second time after the sobriety tests were administered because of Ms. Smith's statement. Based on this determination, the magistrate judge found that the second frisk of the defendant and the seizure of the gun constitutional. According to the defendant, the court should believe the testimony of his wife and disregard the testimony of Officer Baudler, because it is not credible and contradicts the testimony of Officer Williamson.[1]

The record shows that Officer Baudler and the defendant's wife engaged in conversation either before the Alco-Sensor test had been administered, or while the Alco-Sensor test was being administered and thereafter the officer patted down the defendant a second time. The court notes, as the magistrate judge did, that Officer Baudler's testimony is vague and contradictory in many respects. The record shows that the timing and context of the conversation between Officer Baudler and Ms. Smith is unclear. For example, on direct-examination, Officer Baudler was asked:

Q. When the wife gets out of the vehicle that is parked in the street, then who does she approach?

A. She approaches me and Moore - Mr. Moore.

Q. Okay. And is this during your waiting period for the Alco-sensor?

A. Yes.

Q. Okay. What, if anything, does she say to you?

---

[1] It is significant to note that this hearing spanned two separate days, May 24, 2005 and June 7, 2005. Only Officer Baudler and Ms. Smith testified on May 24. Defense counsel asked for a continuance once he discovered that a second officer had been involved in this case. Evidently Officer Williamson's name had not been included in Officer Baudler's report. R. 32: 19- 33:14. So, the first 32 pages of transcript include Officer Baudler's testimony, before anyone knew that Officer Williamson would be a witness in this case.

> A. She indicates to me that the gun that – she had given a gun for Mr. Moore to carry and hold for her.
>
> Q. Okay. Had you checked the defendant, Mr. Moore, for weapons at any time prior to this?
>
> A. No.
>
> Q. Okay. When his wife comes up to you and explains that she has given him a weapon or that she had given him a firearm, what did you do next?
>
> A. I then began to question him about the weapon.
>
> Q. And how did that go? What did you say? How did he respond?
>
> A. He indicated that the weapon he had – he had pepper spray. He advised me he had some pepper spray. And then eventually he did admit that he had a pistol in his back pocket.
>
> Q. Okay. When he admitted that he had a pistol in his back pocket, what did you do?
>
> A. I conducted the – I had him put his hands up on the car, obtained the weapon, also retrieved a bag of marijuana.
>
> Q. Okay. Did you continue with your we'll call it a traffic or DUI stop at that time?
>
> A. Um – I continued my investigation to the DUI, yes.
>
> Q. Okay. And how did that continue? What did you do?
>
> A. I completed the test of him and then with the Alco and the Alco-sensor revealed that he was – had been drinking but was under the legal limit for alcohol.

R. 10:14-25; 11:6-19; 12:1-9. However, on cross-examination, Officer Baudler was asked whether he patted the defendant down immediately after the stop, and the officer answered: "Probably did, but, like I say, I don't recall specifically doing it . . . I just thought [he] was an old guy that was just drunk." *Id.* at 25:24-26:4; 27:3-5. Also during cross-examination, Officer Baudler testified as follows:

7

Q. And it – and it's your testimony that as you're – as you're there waiting whether is – during your observation or waiting for the Alco-sensor, it's only then that you get around to the question of whether this person might be armed.

A. I believe it was the – yes.

Q. And it's only then that Mr. – that your then – that you can recall doing the patdown.

A. I then also – Mr. Moore tells me he's got the gun in his pocket.

Q. Now, is that before or after the Alco-sensor's been completed?

A. Not – not quite sure. I think it's probably before.

Q. You don't recall?

A. I don't recall exactly when it was.

Q. So it's possible that the Alco-sensor had been accomplished at that point in time.

A. It was some time right – real close to when the Alco was being administered because we were standing at the front door of my cruiser is where we were at. And I don't recall if the Alco had been given or not at that point.

Q. So it could have been – this – the questions about the gun and the patdown could have been before or after the Alco-sensor; you're not sure.

A. Yes.

Q: And his wife was across - was right across the street at the curb or closer the entire time.

A: Yes. She came up and she was stopped there and then she actually came up to the car and was standing by us at the point the gun was found and the Alco was being - close to being given.

*Id.* at 27:15- 28:13; 28:17-22. But, on redirect, Officer Baudler then testified as follows:

Q. When the – when the wife gets out of the car and approaches you, how long does she remain in your presence?

A. She remained in her vehicle for a while. I believe it was when I was giving him the sobriety tests that she got out and kind of came up into the

8

> area. And, like I say, she was – she was being cooperative and wasn't being a threat or a problem anyway, so I kind of let her stay there.
>
> Q. Did she remain throughout most of the time period?
>
> A. Yes.
>
> Q. Okay. What did the wife – what did the defendant's wife tell you about whose firearm it was?
>
> A. She said it was hers.
>
> Q. Did she tell you that he had it?
>
> A. Yes.
>
> Q: When did she tell you this?
>
> A: Prior to finding the gun.
>
> Q: Okay. Well, I understand that, but when did she tell you this in regard to getting out of the car and approaching you? Was it right away? Was it somewhere along the line? Can you put a time frame on it?
>
> A: Yeah. It would have been after the sobriety tests were pretty much done and it was waiting - either the Alco to arrive or we had given him the Alco or waiting for the 15-minutes time period to elapse to administer the Alco, but it was in that time or waiting for the results to appear on the Alco. It was right in that time frame. And, like I say, I just don't . . .

*Id.* at 30:12-25; 31:6-18. Clearly the testimony offered by Officer Baudler is inconsistent as to (1) who told him that Mr. Moore had a gun; (2) when he was told that information; and (3) when he found the weapon. Furthermore, his testimony is inconsistent with that of Ms. Smith and that of Officer Williamson, who, initially, was not a witness and testified only after the court continued the suppression hearing.

Ms. Smith testified that she stayed in her vehicle until such time as the second officer arrived. *Id.* at 46:23-47:1. She testified that Officer Baudler conducted a pat-down right after the initial sobriety tests. *Id.* at 52:21-53:2. She also testified that, after the completion of the Alco-Sensor test, they started to walk to their house, when Officer

9

Baudler stopped the defendant and searched him again. *Id.* at 58:18-23. Furthermore, Ms. Smith testified throughout that she did not make any statements to Officer Baudler about the gun prior to the second search.

Officer Williamson testified that, while he administered the Alco-Sensor test to Mr. Moore, he saw Ms. Smith and Officer Baudler conversing. *Id.* at 91:19-21. He testified that, after completing the test, he showed the results to Officer Baudler who was close enough to see the reading of the Alco-Sensor device. *Id.* at 86: 5-14. He testified that he subsequently returned the device to his cruiser, which took him about thirty seconds. *Id.* at 87: 18-20. Meanwhile, Officer Baudler and Mr. Moore returned to a spot near Baudler's car. *Id.* at 86: 20-25. Officer Williamson testified that he was about ten feet away from Officer Baudler and Mr. Moore when he took the Alco-Sensor device to his cruiser. *Id.* at 87: 1-4. According to Officer Williamson, at this time, while he was leaning to put the Alco-Sensor device in his cruiser, he turned back and observed Officer Baudler pat-down the defendant and remove a firearm from the defendant's waist area. *Id.* at 87: 21- 88:4. Specifically, with respect to the firearm, Officer Williamson testified as follows:

> Q. Now, up to into – up until that point in time when you're showing Officer Baudler the digital readout on the Alco-sensor, have you heard anyone there at the scene make any statements about the presence of any firearms?
>
> A. No, I did not.
>
> Q. And to put away the Alco-sensor, do I have the right idea that essentially you just needed to open one of the doors of your cruiser, lean in and place it back on the seat?
>
> A. I put it in its carrying case outside my cruiser and then locked that up and then basically leaned in and put it back in the passenger side of my seat, yes.
>
> Q. Now, while you're doing that, are you – are you still trying to be somewhat aware of what's going on with Officer Baudler?

10

> A. Yes.
>
> Q. Did you hear any statements about any firearms while you're doing that?
>
> A. No, I don't recall that.
>
> Q. After you had put away the Alco-sensor, what did you do?
>
> A. While I was leaning in my car – inside my cruiser to put it away, I don't recall what it was, but something drew my attention back to Officer Baudler and Mr. Moore. And then that's when I observed Officer Baudler patting him down and removed a firearm from Mr. Moore's person.
>
> Q. And did you see where the firearm came from?
>
> A. It would have been somewhere in his waist area. I don't remember exactly where it came from.

*Id.* at 86:15-19; 87:5-17; 87:21- 88:4. On cross-examination, Officer Williamson was asked:

> Q. Okay. If Officer Baudler has previously testified that it was his wife who told her that he was holding a gun – or her gun for him, were you present when that conversation took place?
>
> A. I recall once the weapon was found, his wife stating that if the weapon was hers and that she had requested Mr. Moore to hold it for him (sic).
>
> Q. Okay.
>
> A. But I don't recall anything prior or anything. I was not privy to those conversations with Officer Baudler and Mr. Moore's wife.

*Id.* at 91:22-92:6. The testimony of Officer Williamson contradicts that of Officer Baudler and supports that of Ms. Smith, which indicates that Officer Baudler found the firearm <u>after</u> the Alco-Sensor test was administered and that she did not make any statements to Officer Baudler about the gun prior to the second search. Officer Baudler's testimony is unclear as to the precise time he found the weapon, i.e., before or after completion of the Alco-Sensor test. But, if the Officer Baudler and Ms. Smith conversation took place before the

11

administration of Alco-Sensor test, as he initially testified, then it is illogical that Officer Baudler would wait until the test had been completed to discern if a firearm existed and to allow Officer Williamson to turn his back and walk to the car.  True, both officers consistently testified that Ms. Smith told Officer Baudler that the weapon found on the defendant belonged to her and that she had requested the defendant hold it for her. However, Officer Baudler testified that this conversation took place prior to the second pat-down, while Officer Williamson and Ms. Smith testified that the conversation took place <u>after</u> the pat-down.

The problem in this case lies in the inability of Officer Baudler to remember the timing and sequence of the events.  That time-line is crucial.  If Officer Baudler chose to pat-down the defendant after he had completed the alcohol testing, there would be no basis for such a search, absent the alleged statement by Ms. Smith.  However, Officer Williamson, who stayed in close proximity to Office Baudler when he administered the test and only ten feet away from Officer Baudler and Mr. Moore when he put the Alco-Sensor device in his cruiser, did not hear anyone making any statements about the presence of a firearm.  Officer Williamson heard a statement about a firearm only after the second pat-down.  Accordingly, the court determines that the magistrate judge improperly concluded that Officer Baudler conducted a lawful second frisk of the defendant and seizure of the firearm.

The court finds that the government has not sustained its burden of proof that defendant's warrantless search met the requirements of the Constitution. The government's only evidence to support the timing or the reason for the search comes from a witness who has a difficult time recalling critical issues related to the timing of the search,

in addition to the incriminating statements made by the defendant's wife. In fact, his recollection is substantially different from that of the defendant's wife and his fellow officer. The court is not persuaded that after the defendant passed the sobriety tests, and presumably was free to go home, that his wife would intercede with one of the officers to insure the search and arrest of her husband for being a felon in possession of a firearm, and then, after the seizure, to inform (or according to Officer Baudler, to re-inform) the officers that the gun belonged to her and that she gave it to the defendant that night. Based on the foregoing, the court determines that the defendant's motion to suppress should be granted.

IT IS, THEREFORE, ORDERED:

1. That defendant's motion to suppress, Filing No. 12, is granted.

2. That the defendant's objections, Filing No. 28, to the Report and Recommendation of the magistrate judge are sustained as set forth herein.

3. That the Report and Recommendation of the magistrate judge, Filing No. 27, is adopted in part and rejected in part.

DATED this 24th day of October, 2005.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
United States District Judge